UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| BRENDA GALE VARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 7:13-cv-53-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 16, 17] on Plaintiff's appeal of the Commissioner's denial of her Title II application for a period of disability and disability insurance benefits. [Tr. 9-27]. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

## I. Overview of the Process and the Instant Matter

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 14]. Under step two, the ALJ found the Plaintiff's medically determinable impairments of degenerative disc disease, osteoarthritis, anxiety, and depression to be "severe" as defined by the agency's

regulations. [Tr. 14-15]; 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's impairments of stomach problems, thyroid dysfunction, heart problems, and asthma and breathing difficulties were "non-severe" impairments. [Tr. 14-15]. Finally, the ALJ found that Plaintiff's allegation of carpal tunnel syndrome was not a medically determinable impairment. [Tr. 14].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and determined that none of them met the criteria listed in 20 CFR pt. 404, subpt. P, app. 1. [Tr. 15-17]. After further review of the entire record, the ALJ concluded at step four that Plaintiff had a residual functional capacity (RFC) to perform light work. [Tr. 17]. However, the ALJ found that Plaintiff had limitations in that she could stand and/or walk six hours of an eight hour work day with normal breaks, she can push or pull with her left upper extremities occasionally, she cannot climb ladders, ropes, or scaffolds, she can climb ramps or stairs occasionally, she can stoop, kneel, crouch, or crawl occasionally, and she can reach overhead with either upper extremity occasionally. [Tr. 24]. Additionally, the ALJ found that "the claimant is limited to work that does not require attention and concentration for more than two hours duration." [Tr. 25].

The ALJ found that Plaintiff was unable to perform any of her past relevant work. [Tr. 25]. The ALJ further found that there were jobs in the national economy that Plaintiff could perform. [Tr. 25-26]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 27].

In this appeal, Plaintiff argues that the ALJ erred by not finding that Plaintiff was an individual of advanced age, that the ALJ improperly gave controlling weight to the opinion of a non-examining state agency physician, and that the ALJ failed to properly weigh the medical opinions of Plaintiff's treating physicians.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but

4

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 54 years old at the date of the hearing before the ALJ [Tr. 65] and has a GED. [Tr. 38]. Plaintiff has past work experience as a hospital housekeeper, van driver, and nursing assistant. [Tr. 25]. Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on March 22, 2011. [Tr. 12]. The claims were denied initially and upon reconsideration. [Tr. 12]. Plaintiff requested a hearing with the ALJ, which took place on August 14, 2012. [Tr. 12]. The ALJ issued an unfavorable decision denying disability insurance benefits on October 25, 2012. [Tr. 27].

According to Plaintiff, she has pain in her neck and low back, her left knee swells, and she has pain in her stomach. [Tr. 224]. Plaintiff alleges that her pain is constant. [Tr. 225]. Plaintiff treats her neck and back pain with Biofreeze and a heating pad. [Tr. 225]. Additionally, Plaintiff takes Lortab, Citalopram, Clonazepam, Trazodone, Pravastatin, Hydroxyzine, Synthroid, Asacol, Accolate, Advair, and Pro Air. [Tr. 261].

Plaintiff regularly treated with Dr. Ronald Mann at Best Practice Family Health. On May 17, 2011, Plaintiff was treated

for anxiety depressive neurosis and neck and back pain. [Tr. 353]. On April 13, 2011, Dr. Mann assessed Plaintiff with anxiety depressive disorder, disc bulge of the L1-2 with disc osteophyte, disc bulge of the L2-3 with disc osteophyte, L4-5 disc bulge with disc osteophyte formation and bilateral neuroforaminal encroachment, L5-S1 moderate disc bulge with bilateral neuroforaminal encroachment, C4-5 disc bulge, C5-6 disc bulge with disc osteophyte and severe bilateral neuroforaminal encroachment, cervical hypertrophic facets, C5-6 disc bulge with bilateral neuroforminal encroachment, and osteoarthritis of the left knee with effusion and degenerative meniscal changes of the medial and lateral meniscus. On May 9, 2012, Plaintiff presented with hypothyroidism and hyperlipidemia. [Tr. 448]. On April 9, 2012, Plaintiff was diagnosed with cardiac arrhythmia.

Plaintiff was referred to the Mountain Comprehensive Care Center for treatment of her depression and anxiety. On June 1, 2011 Plaintiff was examined and interviewed. [Tr. 335]. She was diagnosed with anxiety and depression. [Tr. 341]. On June 30, Plaintiff returned and reported no side effects from her medication and that her mood was improving. [Tr. 381]. On August 25, Plaintiff stated that there was some improvement in her mood, she stated that her memory was intact, and attention span was not applicable. [Tr. 383]. In April and July 2012, Plaintiff

reported no improvement and there was no change in diagnosis. [Tr. 410-11, 21-22].

On August 7, 2012, a psychological evaluation of Plaintiff was performed by Dr. Alfred Bradley Adkins. [Tr. 482]. Dr. Adkins found that Plaintiff had a moderate impairment regarding her ability to understand, retain, and follow instructions; a moderate impairment regarding her ability to perform simple, repetitive tasks; a marked impairment regarding her ability to relate to others, including fellow workers and supervisors, and a marked impairment regarding her ability to adapt to the workplace and her ability to tolerate the stress and pressures associated with day-to-day work activity. [Tr. 487].

A review of pulmonary function indicated the absence of any significant degree of obstructive pulmonary impairment and/or restrictive ventilator defect and Plaintiff had normal diffusing capacity. [Tr. 349]. A radiology report from April 2011 revealed degenerative disc and joint disease in the lumbar spine, with no evidence of instability with flexion/extension and the vertebral bodies and alignment were within normal limits. [Tr. 359]. A radiology report from April 2011 of the cervical spine revealed stable degenerative disk disease at the C5-6 level with associated kyphosis, and flexion/extension views revealed no evidence of subluxation or instability. [Tr. 360].

An MRI of the lumbar spine in March 2011 revealed bulging discs at the L4-5 and L5-S1 with bilateral nueral foraminal encroachment related to lateral bulging of the disc and hypertrophic facet joint change and there was no disc herniation at any visualized level or any high-grade spinal stenosis. [Tr. 330]. An MRI of the cervical spine in March 2011 found bulging discs and osteophyte formation most prominently in C5-6 with bilateral neural foraminal encroachment related to lateral bulging of the disc and hypertrophic facet joint change at this level and to a lesser degree similar findings at C4-5 and C6-7 and there was no disc herniation at any visualized level or any high-grade spinal stenosis. [Tr. 331]. An MRI of the left knee in March 2011 revealed osteoarthritis with joint effusion, no complete meniscal tear, the anterior and posterior cruciate ligaments were intact, and the medial and lateral collateral ligaments were intact. [Tr. 331].

Vocational expert Dr. David Burnhill testified at the hearing before the ALJ. [Tr. 55-65]. Dr. Burnhill testified that a person with an RFC equivalent to the ALJ's RFC finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 58-59]. However, Dr. Burnhill found that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 59]. Dr. Burnhill further found that a hypothetical person that could perform sedentary

work and had the same limitations could perform jobs in the national economy. [Tr. 61-62]. Finally, Dr. Burnhill testified that if Plaintiff's testimony at the hearing was taken as true and afforded full credibility a hypothetical person could not perform any jobs in the national economy. [Tr. 62].

Plaintiff stated that during her typical day she gets up, takes her medication, eats breakfast, watches TV, her son comes by to help straighten up her house, she talks to her sister on the phone, she sits on the porch, and then she goes to bed. [Tr. 216]. Plaintiff is able to care for her personal grooming and hygiene [Tr. 217], she is able to microwave meals, but does not cook [Tr. 218], can perform some household chores [Tr. 218], and is able to go grocery and clothes shopping. [Tr. 219]. Plaintiff claims that she no longer drives, and when she travels either walks or rides in a car. [Tr. 219]. Plaintiff claims that she likes to watch television, attends church, and likes to read, but no longer has the concentration to do so. [Tr. 220].

## IV. Analysis

Plaintiff argues that the ALJ erred by not placing her in the advanced age category because the ALJ did not recognize that Plaintiff was in a borderline age range, and that Plaintiff should be considered as "advanced age." Plaintiff also argues that the ALJ gave improper controlling weight to the opinion of non-examining state agency physicians and improperly gave little

weight to the opinion of Plaintiff's treating physicians. Defendant responds that the ALJ properly applied the age category for a borderline situation, and that substantial evidence supports the weight the ALJ gave to the medical opinions. For the reasons that follow, the Court will deny Plaintiff's motion and grant Defendant's motion.

## I. The ALJ did not err in assessing Plaintiff's age category.

The regulations provide that, in a borderline situation, the Social Security Administration "will not apply the age categories mechanically." 20 C.F.R. § 404.1563(b). Rather, "[i]f [the claimant is] within a few days to a few months of reaching an older age category, and using the older category would result in a determination or decision that [the claimant is] disabled, [the Social Security Administration] will consider whether to use the older age category." *Id.* Plaintiff alleges that because she was approximately five months from being within an older age category at the time of the ALJ's decision, and the older age category accompanied with the ALJ's finding that Plaintiff could perform light work would require a finding of disabled, the ALJ erred by not finding that she was within the older age category.

> While an ALJ may need to provide, in cases where the record indicates that use of a higher age category is appropriate, some indication that he considered borderline age categorization in order to satisfy a reviewing court that his decision is supported by substantial evidence, § 1563(b) does not impose on

ALJs a *per se* procedural requirement to address
borderline age categorization in every borderline
case.

*Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).

However, "[i]n cases where a claimant has significant

'additional vocational adversities' . . . an explanation may be

necessary in order to satisfy the substantial evidence

standard." *Caudill v. Astrue*, 7:06-cv-28-DCR, 2009 WL 3270491,

at *5 (E.D. Ky. Oct. 9, 2009) (quoting *Bowie*, 539 F.3d at 401).

At the time of the ALJ's decision, Plaintiff was

approximately five months from turning 55, which would qualify

her for the advanced age category. The ALJ's decision did not

explicitly state reasons for including Plaintiff in the

approaching advanced age category. [Tr. 25]. However, it is

undisputed that the ALJ was aware of Plaintiff's age at the time

of his decision, because he accurately recited Plaintiff's

birthdate and age at the alleged onset date. [Tr. 25]; *Hensley

v. Astrue*, No. 12-cv-106-HRW, 2014 WL 1093201, at *3 (E.D. Ky.

Mar. 14, 2014) ("[I]t is clear that by properly stating

Plaintiff's birth date and age on his alleged onset date . . .,

the ALJ acknowledged he was aware of Plaintiff's age on the date

of his decision."). Thus, Plaintiff cannot argue that the ALJ

did not consider Plaintiff's age in making the determination,

which is all that is required by the regulations in borderline

situations. *See Bowie*, 539 F.3d at 399 ("[N]othing in [the

language of the regulations] obligates an ALJ to address a claimant's borderline age situation in his opinion. . . . Rather, the regulation merely promises claimants the Administration will 'consider' veering from the chronological-age default in borderline situaitons.").

An explanation may be required only where a claimant has shown that she has "additional vocational adversities" that would significantly impact her ability to work. *See Bowie*, 539 F.3d at 401.

> Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon – without substantially narrowing – a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. . . . Other adverse circumstances in individual cases may justify using the higher age category.

Application of the Medical-Vocational Guidelines in Borderline Age Situations, HALLEX II-5-3-2 (S.S.A.), 2003 WL 25498826.

Plaintiff has not set forth an additional vocational adversity that requires a more detailed explanation from the ALJ. Plaintiff has a GED [Tr. 38] and can read and write, as is exhibited by her testimony, [Tr. 54], and completion of the function report and pain questionnaire. [Tr. 215-228]. A review of the transcript of Plaintiff's testimony before the ALJ does not exhibit a marginal ability to orally communicate in English.

Plaintiff has work experience across many work settings and the vocational expert described her past work as both unskilled and semi-skilled. [Tr. 58]. Finally, Plaintiff has not alleged an additional impairment that infringes upon Plaintiff's occupational base. Thus, the ALJ was only required to consider that Plaintiff was in a borderline age range, and the Court finds evidence of that consideration. Accordingly, the ALJ did not err in placing Plaintiff in the approaching advanced age category. *See Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516 (6th Cir. 2011) (finding that the ALJ properly placed Plaintiff, who was two months shy of 55 at the time of the hearing decision, in the closely approaching advanced age category "without further explanation").

**II. The ALJ did not give improper weight to the opinion of the non-examining state agency physician.**

Plaintiff argues that the ALJ gave improper controlling weight to the opinions of Dr. Jack Reed, a non-examining state agency physician, and Leigh Ann Roark, a non-examining state disability examiner. The ALJ merely cites the opinion of the expert at Exhibit 4A. Thus, the Court views Plaintiff's challenge as to the assessment made by the physicians, and not the review of those assessments made by Roark. In this case, the ALJ gave great weight to the opinion of the State Agency expert

after finding that the opinion was "balanced, objective, and consistent with the evidence of record as a whole." [Tr. 24].

All evidence from nonexamining sources is opinion evidence. 20 C.F.R. § 416.927(e). "The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3.

The limitations imposed upon Plaintiff by the state agency physician, Dr. Jack Reed, are supported by the evidence in the record. Dr. Reed found that Plaintiff has the following exertional limitations: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, could stand and/or walk for six hours of an eight hour work day, could sit for 6 hours in an eight hour work day, and was limited to push and/or pull in the lower extremities. [Tr. 90]. Dr. Reed found the following postural limitations: occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently balance, occasionally stoop, occasionally kneel, and occasionally crouch. [Tr. 91]. Dr. Reed assessed Plaintiff with

the manipulative limitation of limited reaching in left and right overhead. [Tr. 91].

The ALJ found that these limitations were supported by the medical evidence and were based on a thorough review of the medical evidence as a whole. Dr. Reed pointed to specific medical evidence in the case record to support his limitations, and the medical evidence recited by the ALJ in her opinion provides substantial evidence for the limitations.

The ALJ specifically pointed to MRI testing performed in March 2011. [Tr. 19]. The MRI revealed bulging discs in the lumbar spine and cervical spine, but no disc herniation or high-grade spinal stenosis. [Tr. 19]. An MRI of the left knee revealed osteoarthritis, but not a complete tear of the meniscus and all major ligaments were intact. [Tr. 19]. The ALJ pointed to X-Rays of the spine in April 2011 that revealed mild to moderate degenerative disc disease, but alignment was at normal levels and flexion did not reveal instability. [Tr. 19-20]. Furthermore, nerve testing was normal, and showed a low level of radiculopathy at the left L5-S1 and mild level at the right L5-S1.

The ALJ also noted the activities Plaintiff is able to perform in her daily living that were inconsistent with Plaintiff's subjective complaints. The ALJ stated that Plaintiff was capable of maintaining grooming and hygiene, she performs

some household chores, she communicates with others, and she responds to questions without unusual concentration or focus of attention. [Tr. 22]. The ALJ also noted that Plaintiff did not demonstrate strength deficits, neurological deficits, muscle astrophy or dystrophy, she responded well to treatment, she uses no assistive devices, she had routine medical treatment with no evidence of hospitalization, and had no ongoing physical therapy. [Tr. 22]. The ALJ believed the lack of treatment and lack of medical evidence belied Plaintiff's subjective complaints. The medical evidence, and lack of objective medical evidence, provides medical evidence that a reasonable person might accept as substantiating the opinion of Dr. Reed.

    As there was medical evidence entered into the record after Dr. Reed's assessment[1], the Court requires "some indication that the ALJ at least considered [subsequent medical records] before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). There is indication that the ALJ considered subsequent medical evidence after Dr. Reed's review in October 2011 because the ALJ specifically referenced medical evidence

---

[1]    Dr. Reed completed his evaluation on October 14, 2011. [Tr. 96]. The ALJ issued her opinion on October 25, 2012. [Tr. 27].

from examinations that occurred after Dr. Reed submitted his RFC assessment of Plaintiff. Therefore, the ALJ was entitled to give weight to Dr. Reed's opinion.

### III. The ALJ did not err by giving less weight to the treating physicians.

Plaintiff alleges that the ALJ did not give adequate weight to the medical opinions of Plaintiff's treating physicians, Dr. Ronald Mann and Dr. Pratap V. Pothuloori, and the opinions of her mental health counselors at Mountain Comprehensive Care Center.

> [A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source).

*Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)). "These reasons must be

'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "[The Court] will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

The ALJ did not discuss the opinion of Dr. Pratap V. Pothuloori. While treatment notes from Dr. Pothuloori were before the ALJ, the only evidence of Dr. Pothuloori's medical opinion on Plaintiff's limitations were submitted as evidence after the ALJ issued her decision. The ALJ issued her decision on October 25, 2012 and Dr. Pothuloori's opinion was not submitted until January 31, 2013. [Tr. 495-99]. "[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). However, the

Court may remand the case for consideration of the new evidence. *Id.* ("The district court can, however, remand the case for further administrative proceedings in light of the evidence. . . ." (internal quotation marks omitted) (quoting *Cline*, 96 F.3d at 148)). "For purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). If new evidence is offered, "[t]he moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Franson v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 716, 726 (W.D. Mich. 2008) (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 485 (6th Cir. 2006); *Oliver v. Sec. of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Brace v. Comm'r of Soc. Sec.*, 97 F. App'x 589, 592 (6th Cir. 2004)). The Plaintiff has not even attempted to explain why the opinion of Dr. Pothuloori was not obtained prior to the ALJ's decision, and, therefore, the Court will not consider this new evidence.

Similarly, Plaintiff's argument that the ALJ failed to comply with the treating physician rule as to Plaintiff's other counselors at Mountain Comprehensive Care Center is meritless. The only other opinion as to Plaintiff's limitations and ability to work was by Martha Copley-Coleman, a licensed clinical social

worker. [Tr. 479]. "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation. . . ." 20 C.F.R. § 404.1502. A licensed clinical social worker is not an acceptable medical source, and, thus, the opinion of Ms. Copley-Coleman is not entitled to the deference of the treating physician rule because she does not meet the definition of a treating physician. *See* SSR 06-03p, 2006 WL 2329939, at *2-3 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. . . . [Opinions from] medical sources who are not 'acceptable medical sources,' such as . . . licensed clinical social workers . . .are important and should be evaluated on key issues such as impairment severity and functional effects."). The ALJ was only required to consider the opinion of Copley-Coleman, which the ALJ did. Accordingly, the ALJ did not improperly apply the treating physician rule as to Copley-Coleman.

The Court is left only to determine whether the ALJ followed the treating physician rule for the opinion of Dr. Mann. Dr. Mann's final functional evaluation found that Plaintiff could lift 10 pounds, frequently lift or carry 10 pounds, occasionally lift or carry less than 10 pounds, sit a total of less than three hours, was limited to pushing or

pulling less than 20 pounds, could never climb, balance, stoop, kneel, crawl, or crouch. [Tr. 476-77]. Dr. Mann further opined that Plaintiff was limited in reaching, should avoid heights, vibrating machinery, and temperature extremes, as well as dust, fumes, and humidity. [Tr. 477]. Dr. Mann's final diagnosis of Plaintiff was anxiety depressive neurosis, back pain, neck pain, and lumbar radiculopathy. [Tr. 473]. Additionally, when evaluating the musculoskeletal system, Dr. Mann noted that Plaintiff had degenerative disc disease and osteoarthritis. [Tr. 474].

The ALJ provided good reasons for not giving great weight to the medical opinion of Dr. Mann. The ALJ found that the medical records and treatment history did not support the limitations imposed, the opinion did not relate to specific findings, and the assessments were not supported by Plaintiff's self-report on daily living. [Tr. 24]. The reasons provided by the ALJ for giving little weight to the opinion of Dr. Mann are supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ pointed out that Plaintiff is capable of maintaining her own grooming and hygiene, performs household chores, communicates with others, and that she responded to questions without unusual concentration or focus of attention. [Tr. 22]. As to her medical treatment, the ALJ noted that, despite Plaintiff's self-reported

problems, medical testing did not reveal strength deficits, circulatory compromise, neurological deficits, muscle spasms, fasciculation's, fibrillations, or muscle atrophy or dystrophy, which would likely be present if Plaintiff suffered from severe or intense pain and physical inactivity. Furthermore, the ALJ noted that Plaintiff showed no adverse side effects from treatment, used no assistive devices, a neurological examination was normal, and a musculoskeletal examination showed no swelling, effusion, or deformities. [Tr. 22]. The ALJ continued to discuss Plaintiff's treatment by noting that, although back pain may be present, there was no history of hospitalization, Plaintiff had never been referred to a physical therapist, she is able to move in a satisfactory manner, and Plaintiff only visited doctors for routine follow-up visits, rather than seeking intensive treatment for severe, prolonged impairments. [Tr. 22]. Thus, the ALJ relied upon evidence a reasonable mind might accept as adequate to support the conclusion that little weight should be given to the opinion of Dr. Mann. Thus, the ALJ did not err by improperly applying the treating physician rule.

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [D.E. 16] be, and the same hereby is, **DENIED;**

(2)   that Defendant's Motion for Summary Judgment [D.E. 17]
be, and the same hereby is, **GRANTED**.

This the 9th day of May, 2014.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge